The opinion of the Court was delivered by
Waedlaw, Oh.
It is manifest from the Circuit decrees in these cases, that the Chancellor was dissatisfied with the reasons expressed for the judgment of the Court of Appeals in Sweet vs. Sweet, Speers’ Eq. 311, yet was restrained by deference to his superiors in authority, from the full expression of his dissatisfaction. In this tribunal we are not fettered by this consideration, and we may frankly discuss the reasoning *198 of foregoing equals in authority. The point decided in that case was simply, that it was insufficient cause for the removal of a guardian from his office, that he had employed in his own business the funds of his ward; and so far as it goes, the decision seems reasonáble, although the Court might well have proceeded to direct a change of investment, with warning that the guardian would be removed if he persisted in retaining the trust funds for his own use and accommodation. It is, however, the argumentation of the Chancellor delivering the opinion of the Court which is most objectionable. ’ He says in substance, that the retaining by a guardian for his own use of the funds of his ward, might be the very best use of them — that he was liable for interest as a borrower would be, with the advantage that there would be no break in the time the interest was accruing; whereas, as to sums received from a borrower, some time would be allowed to the guardian for reinvestment — that the funds were as secure in the possession of a guardian, by reason of his bond being always under the supervision of the Court, and annually brought to its special attention, as they would be by the bond of any borrower, that it was not usual, nor required by law in this State, that trust funds particularly of small amount in the country should be invested in public securities, or in any special mode — and that it was difficult for the Court to control a guardian in his use of moneys.
The authorities cited in the latter of the Circuit decrees under consideration demonstrate, that the first duty of a trustee is to put the estate committed to him in a state of security. Equity and common sense require that he should be unbias-sed in the discharge of this primary duty. His beneficiaries are entitled to the exercise of this independent, impartial, judgment ; but this is impossible if he lend to himself. All the reasons which inhibit a trustee to sell from buying at his own sale, exact with equal force that a trustee to lend shall not borrow from himself. Mulligan vs. Wallace, 3 Rich. Eq. 111. *199 He has the same superior knowledge of the condition of the estate, and the same temptation to obtain it at undervalue. It is proper for the security of his beneficiaries and of his own sureties, and for the avoidance of litigation of a particularly disturbing character, that the trust estate should be secured doubly, Eirst, by stocks or bonds, in which it may be invested, and then by his own bond. There can be no doubt of the principle asserted by the Chancellor, that if a trustee mix trust funds with his private moneys, and employ the aggregate in a trade or adventure of his own, he is liable at the option of the beneficiary for re-imbursement of the capital so employed, with usual interest, or for the capital and all profits, which have been made. But suits by beneficiaries against trustees for extraordinary profits, so frequently lead to perjury or suppression of the truth where all the evidence is in possession of the trustees, and so frequently lead to estrangement and hostility where the parties are of kin, that it is politic to prevent as far as practicable such irregular dealings, with trust estates. It has become á crying evil, in our times, that persons seek trusts, especially administration and guardianship, not for the good of those beneficially interested, but for the accommodation of themselves 'and their sureties and other special friends. This is in flagrant violation of the rules and doctrines of equity concerning trusts.
In support of these principles some cases will be added to those cited in the circuit decrees. Lord Thurlow said in Sadler vs. Hobbs, 2 Br. O. 0. 17, the trustee suffered the money to be out for a very long time in the hands of a tradesman, and neglected to call'it in, notwithstanding the party interested in the fund was an infant; in such case he is clearly chargeable. In Freeman vs. Fairlee, 3 Meri. 41, Lord Eldon said, the executor has done what no executor is justified in doing; he has blended the accounts of the estate with his own commercial houses. In Wilhes vs. Steward, Geo. Coop. 0. G. 6, where executors were empowered to invest a legacy in the *200 public funds or in sucb other security as they could procure and think safe, Sir "William Grant was clearly of opinion that they had no power to lay out the money upon personal security, and that their case was like that of trustees to sell who could not be justified in selling for any but the best price obtainable for the property, and that the legatee was fully entitled to the security of the Court. Adye vs. Fanillateau/ 1 Cox 60 and n ; Smith vs. Smith, 4 Jno. C. C. 281, 445. In Langston vs. Ollwant, G. Coop. 83, the will gave the trustees power to invest a legacy upon real or,personal security, and declared that they should not be answerable for any loss happening without their wilful neglect or default; they lent the money (and some of their own too) on his bond to the legatee’s husband, a trader in good credit and circumstances, who some years afterwards became bankrupt: held that the authority of the trustees did not extend to an accommodation of their kinsman, and that they were liable for the loss. In Stichney vs. Sewell, 1 Myl. & Or. 8, two executors as trustees were empowered to lend money on government, real or personal security, and one of them lent the money to his co-trustee and the partner in trade of the latter on mortgage of real estate of fluctuating value; the borrowers became bankrupt, and the mortgaged estate proved inadequate for the satisfaction of the loan: Lord Cottenham held the executors liable for the deficiency, saying the testator intended that the estate should have the benefit of the executors’ discretion, but they lend to themselves.
There can be no doubt that a guardian is a trustee and liable as other trustees are; Dulce of Beaufort vs. Baty, 1 P. Wms. 704. It may be that to trustees not under bond and such as are .not required to account annually to the Court, as executors and trustees of the appointment of parties, the doctrines of the Court might be somewhat more promptly and stringently applied, than to guardians who give bond and are required to account to the Court annually, and are under *201 the responsibility of giving additional sureties when it seems requisite; still it is not safe to indicate any relaxation of the rules in equity concerning trustees in favor of such as Rave given bond. Suppose a Master or Commissioner in equity, who is under bond for the faithful execution of his office, were directed by the Court to invest on proper security funds in the custody of the Court, and he should report that he had taken the funds for his own accommodation, and that his official bond was fit security, would any Chancellor deem this a safe investment ? Or take the case of a trustee appointed by the Court and under bond for the faithful execution of his duties, who was directed to sell and re-invest the trust estate,' could it be tolerated that he should sell and take the moneys for his own use, and cooly refer for security to his official bond ? It is unsafe to trust to bonds merely, for common experience teaches that, where the principal fails in the discharge of his duties and in his pecuniary means, the sureties contrive to be likewise insolvent. Integrity of the trustee is a surer safeguard than any common law obligation. But where we must depend on bonds, we should have as many as can be reasonably procured.
In the present case the guardian is engaged in trade, and although there is no express charge in the bill nor admission in the answer, that the funds of his wards are employed in this trade, yet from the general charge and admission that the funds are employed for his use, it is pretty plain that the estate of his wards is exposed to the hazards of his mercantile-enterprise. . They seem safe now, but who can tell how long they will be safe ? We are of opinion that the guardian should change as soon as practicable the investment of the funds of his wards into public securities, or bonds secured by lien on real estates, or at least bonds of third persons with proper sureties. It is the special duty of the Master to report concerning such subject, but the Court is not disinclined to receive information for security of funds within its control *202 from any person moved by friendly and proper motives towards the beneficiaries.
Nevertheless we affirm the conclusions of the Chancellor in these cases, under the special circumstances. The bill against Spear, was filed at the instance of Mrs. Wood, seemingly for the gratification of ill-nature towards him rather than the conservation of the interests of his children and wards, before he had any opportunity of changing an investment originally and long before made by her as trustee by breach of trust, and before, in fact, he had formally become trustee. She was, however, liable as trustee for breach of trust, and had some pretext for interposing to save herself from the consequences. If she had not perversely refused to pay over to the guardian when appointed, the funds remaining in her hands, she would have been entitled to more indulgence.
Costs are considered within the discretion of the Chancellor, and are not per se the subject of appeal, nor are they made so in this case. My brethren have left this matter to me, and as I determined it on the circuit principally in deference to the reasoning in Sweet vs. Sweet, I think on review I have •dealt hardly towards Mrs. Wood. Clearly the infants are not liable to costs, nor in my opinion, is their guardian sued before he had committed any breach of trust; still she had the excuse for interposition of saving herself from primary, liability. The bill' at her instance was premature. She was clearly in fault in refusing to pay over to the guardian the funds demanded in the second suit.
It is ordered and decreed that the order as to the liability of Susan Wood, for costs in the first suit be rescinded, and that the appeal be dismissed.
Johnston, Dunkin and Dabgan, CC., concurred.

Appeal dismissed.